ELIZABETH CROCKER, Respondent, v. ERIE RAILROAD COMPANY, Appellant.

Fourth Department, May 4, 1927.

Railroads — crossing accidents — plaintiff was injured while passing over crossing protected by gates — plaintiff's testimony that gates were up overcome by testimony on behalf of defendant that at time of accident gates were down and that plaintiff passed under gates and on tracks — contention by plaintiff that weather was foggy is not sustained by evidence although evidence shows that weather was cloudy — plaintiff was guilty of contributory negligence — conduct of plaintiff's counsel tended to prejudice jury.

This is an action to recover damages suffered by the plaintiff when she was struck by one of defendant's trains at a railroad crossing early in the morning. The

plaintiff's testimony to the effect that the gates were up as she entered the crossing, that the weather was foggy, and that she looked both ways before crossing the tracks but saw no train approaching, is overcome by the testimony on the part of defendant's witnesses that the gates were down before the plaintiff reached the crossing, and that while the weather was dark and cloudy there was no fog in the air at that time. In fact, plaintiff testified that she was able to see a distance of one hundred and seventy feet clearly enough to characterize a man standing across the track as young. The verdict of the jury in favor of the plaintiff is contrary to the evidence. The plaintiff was guilty of contributory negligence for if she looked, as she testified, she must have seen the approaching train since her view was unobstructed except for alleged weather conditions for a distance of about one-half mile in the direction from which the train was approaching.

The verdict apparently is the result of the conduct of plaintiff's trial counsel in a studied effort to prejudice the jury.

APPEAL by the defendant, Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Steuben on the 27th day of November, 1925, upon the verdict of a jury for $7,500; also from an order entered in said clerk's office on the 2d day of December, 1925, denying defendant's motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the 24th day of November, 1926, denying a motion for a new trial on the ground of newly-discovered evidence.

*Orcutt & Hollis* [*John W. Hollis* of counsel], for the appellant.

*Sebring & King* [*James O. Sebring* of counsel], for the respondent.

CROUCH, J. Plaintiff, while crossing defendant's tracks along Wildwood avenue near Salamanca, was run down and injured by one of defendant's east-bound trains. The railroad tracks run substantially east and west. Wildwood avenue, running from Salamanca to East Salamanca, crosses the railroad tracks diagonally, running northeast and southwest. At the time of the accident the crossing was protected by the usual railroad gates, which were raised and lowered by an operator stationed in a tower just north of the tracks and east of Wildwood avenue. Plaintiff had a verdict.

We are concerned here with an appeal from the judgment rendered on that verdict, together with the order denying a new trial upon the minutes, and also with an appeal from an order denying a motion for a new trial on the ground of newly-discovered evidence.

The plaintiff herself was the only witness who testified in her behalf concerning the facts of the accident. She had been working during the night at a hotel in Salamanca where she was employed. She lived a mile or more away north of the railroad tracks toward East Salamanca. About seven o'clock in the morning on her way home she approached the crossing. She said it was a foggy morning;

that she could only see about twenty feet ahead of her; that as she neared the crossing she saw an automobile go over ahead of her; that she noticed the crossing gates were up; that before she went on the tracks she listened, and that no whistle was blown or bell rung; that she looked in both directions, first over her left shoulder, which was the direction from which the train came, then to her right, and that she saw nothing. She " walked right along," and was hit by the train.

The important issues of fact tendered by that testimony were, *first,* whether the gates were up or down; *second,* whether the weather was foggy or otherwise, because, having looked, unless her vision was obscured by weather conditions, it is undisputed that she could have seen for about half a mile in the direction from which the train came; and *third,* whether warning signals were given or not.

The defendant swore five eyewitnesses, apart from the engineer, who all testified in substance that the gates were down; that plaintiff as she approached the crossing and when within 50 or 100 feet of it, began to run, and without stopping or looking went under the arm of the gate which extended over the sidewalk and ran directly in front of the engine. One of these five witnesses was the towerman who controlled the gates. Two others were railroad men in the employment of another railroad which crosses the Erie to the east at East Salamanca. They were walking south on Wildwood avenue, and being acquaintances of the Erie towerman, went up into the tower for a brief visit. They both say that the gates were being lowered as they approached the tower, and that they could see the train coming 2,000 or 3,000 feet to the west. The other two were in an automobile which they say had been stopped just south of the crossing by the lowering of the gates. One of those witnesses was in the employ of the Erie and the other, his sister-in-law, was in the employ of the other railroad above referred to. All of these witnesses, while admitting that the morning was cloudy and dark, deny that it was foggy. Two of these five witnesses testify positively that a crossing whistle was blown before the train reached the crossing, as well as a sudden sharp whistle immediately preceding the collision.

The five members of the train crew were also sworn on behalf of defendant. There was no substantial disagreement in their testimony in regard to weather conditions, all denying that it was a foggy morning, although admitting that it was cloudy or rainy. The engineer and some of the others testified to the crossing whistle having been blown. On the question of the gates the conductor testified that they were down when he got off the train

immediately after the accident.  The engineer said that he could not swear that they were down.  The fireman did not get out of the cab and says nothing about the gates.  The head brakeman did not notice the gates.  The rear brakeman, upon whose testimony great weight is placed, testified as follows:  " Q. What did you observe down to the crossing?  A. The semaphore first.  Q. What about the semaphore?  A. The semaphore, we had a clear semaphore.  Q. What was the next thing that you noticed?  A. I noticed —  Q. Well, anything that you saw there, whether it was the next thing or not.  Just tell what you observed; go ahead and tell us what you saw, if anything.  A. Well, I noticed the gates was up; the gates was up, and I could see the gate up."

On the motion for the new trial there is a statement by this witness to the effect that when he testified that the gates were up, that he could see the gate up, he had in mind the semaphore about which he had just been talking, and not the crossing gates. He says the crossing gates were down.  The motion for the new trial is based not only on that statement but upon the affidavits of two other witnesses discovered since the trial who were upon the highway near the crossing at the time of the accident, saw that the gates were down, knew that warning signals were given, and that it was not a foggy morning.

We are of the opinion that the finding of the jury on the questions of fact is against the weight of the evidence.  If there were any doubt about that, so far as the questions of the warning signals and of the position of the gates are concerned, the testimony of the plaintiff that she looked to the west before she crossed, taken in connection with all the testimony, including her own, bearing upon the then existing weather conditions, clearly indicates that she was guilty of contributory negligence.  If she looked, as she says she did, and could, under the then existing conditions, have seen, but failed to see, the approaching train, then the position of the gates and the matter of signals become much less important. When she looked, according to her own testimony, she was only twenty-two or twenty-three feet from the place where she was hit. The view from that point was unobstructed except for weather conditions.  Walking right along, as she says she was, it would have taken her about five seconds to reach the point of collision. At that time the train, under the evidence as to speed, would have been distant about one hundred and ninety feet.  The plaintiff's daughter says that the weather was foggy and that at her home where she was that morning she could see only about thirty feet.  Plaintiff said that she could see about twenty feet; but immediately thereafter testified to seeing a man whom she could

characterize as being young, standing across the tracks near the tower, a distance of one hundred and seventy feet from her. All the other witnesses, interested and disinterested alike, deny that it was foggy, and say that the view was clear for a distance of about half a mile, notwithstanding the prevailing clouds or rain.

A finding by the jury, in the face of such evidence, that plaintiff did not and could not see the train approaching when she looked, requires some explanation. The explanation is readily found in the conduct of plaintiff's trial counsel. Throughout the trial there was a studied and consistent play to the sympathy and prejudice of the jury, culminating in a summary which contained gross misstatements of the evidence, and an attack upon certain of defendant's witnesses which passed all permissible limits.

The judgment appealed from should be reversed on the facts, and a new trial granted, with costs to the appellant to abide the event. And in view of that decision, the appeal from the order should be dismissed, without costs.

All concur. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and TAYLOR, JJ.

Judgment and order reversed on the facts and a new trial granted, with costs to appellant to abide event.

Appeal from an order denying motion for new trial on ground of newly-discovered evidence dismissed, without costs of this appeal to either party. The reversal of the judgment in the action makes it unnecessary to consider the appeal from this order.